Kelly F. Huedepohl, OSB No. 133896
khuedepohl@grsm.com
Gordon Rees Scully Mansukhani, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone:  (503) 382-3844
Facsimile:  (503) 616-3600

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, | Case No. 3:21-cv-00059 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION, AND EQUITABLE SUBROGATION** |
| vs. | |
| OREGON SCHOOL BOARDS ASSOCIATION PROPERTY AND CASUALTY COVERAGE FOR EDUCATION TRUST, | |
| Defendant. | |

Plaintiff, Atlantic Specialty Insurance Company ("ASIC"), by and through its undersigned counsel, brings this action against Defendant Oregon School Boards Association Property and Casualty Coverage for Education Trust ("PACE") and alleges as follows:

### I.    INTRODUCTION

1.    ASIC seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, that PACE had a duty to defend and indemnify ASIC and PACE's mutual insured, Quency Fahlgren ("Fahlgren"), under a PACE liability policy that afforded coverage, subject to certain terms and

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 1

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

conditions, to Gresham-Barlow School District ("GBSD") and Fahlgren, GBSD's volunteer ski instructor, for the claims at issue in two underlying lawsuits, *D.V. v. Quency Fahlgren*, *et al.*, Case No. 17CV25709; in the Multnomah County, Oregon Circuit Court (the "*D.V.* Action") and in *Joel Vermillion v. Quency Fahlgren, et al*., Case No. 19CV06597; in the Multnomah County, Oregon Circuit Court (the "*Joel Vermillion* Action") (collectively, the "Underlying Actions").

    2.      ASIC likewise seeks recovery from PACE pursuant to causes of action for equitable contribution, contractual subrogation and equitable subrogation.  ASIC seeks recovery of PACE's equitable share of defense fees and costs ASIC incurred defending Fahlgren in the Underlying Actions, and PACE's equitable share of the settlement amount ASIC paid on Fahlgren's behalf in the Underlying Actions.

    3.      In the Underlying Actions, D.V. and Joel Vermillion sought damages for bodily injury and emotional distress that were covered by the Liability Coverage Document of the PACE Property and Casualty for Education Trust (the "PACE Policy").  PACE neglected to defend and indemnify Fahlgren in the Underlying Actions, as was required by the PACE Policy. Thus, ASIC, the liability carrier for the Oregon Interscholastic Ski Racing Association ("OISRA") and Fahlgren, and State Farm Fire and Casualty Company ("State Farm"), the homeowner and umbrella liability carrier for Fahlgren, defended and indemnified Fahlgren without contribution from PACE.

    4.      ASIC paid for fifty-percent of Fahlgren's defense costs in the Underlying Actions, pursuant to a primary liability policy issued by ASIC to the Alpine Ski School Program and on which OISRA was a named insured Certificate Holder and Fahlgren was an additional insured (the "ASIC Primary Policy").  ASIC likewise contributed to the settlement of claims against Fahlgren in the Underlying Actions, pursuant to the ASIC Primary Policy and an excess liability policy issued by ASIC to the Alpine Ski School Program and on which OISRA was a named

COMPLAINT FOR DECLARATORY JUDGMENT,
EQUITABLE CONTRIBUTION, CONTRACTUAL
SUBROGATION AND EQUITABLE SUBROGATION -
Page 2

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

insured Certificate Holder (the "ASIC Excess Policy").  PACE breached its duties to defend and indemnify Fahlgren.  ASIC is, therefore, entitled to recover the fair and equitable shares of Fahlgren's defense fees and costs and the settlement contribution for which PACE was responsible but for which ASIC paid.

## II.    PARTIES

5.    ASIC is a New York corporation with its principal place of business in Plymouth, Minnesota.

6.    Upon information and belief, PACE is an Oregon Trust with its principal place of business in Salem, Oregon.

## III.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the suit is between citizens of different states.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(2) and LR 3-2(b) because PACE conducts regular and sustained business in this district, and a substantial part of the events giving rise to the claims occurred in this judicial district.

## IV.    BACKGROUND FACTS

## <u>UNDERLYING ACTIONS</u>

9.    Based on information and belief, on February 14, 2017, D.V. was skiing at Mt. Hood Skibowl ski resort with his parents.  On the same date, Fahlgren was coaching GBSD students as a GBSD volunteer ski coach, in preparation for a ski racing event at Mt. Hood Skibowl ski resort (the "Event").  At the Event preparation, while carrying slalom gates at a high

---

COMPLAINT FOR DECLARATORY JUDGMENT,
EQUITABLE CONTRIBUTION, CONTRACTUAL
SUBROGATION AND EQUITABLE SUBROGATION -
Page 3

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

rate of speed down a hill, Fahlgren struck D.V. causing him severe bodily injury (the "Accident").

10.    On or about June 20, 2017, Joel Vermillion, D.V.'s father, filed the *D.V.* Action against Fahlgren, OISRA and GBSD, and sought damages for D.V.'s bodily injury (the "Complaint").  The Complaint alleged that at all material times Fahlgren was working and volunteering in the course and scope of his employment for GBSD and OISRA and was acting as an actual and apparent agent of GBSD and OISRA.  The Complaint also alleges that Fahlgren was negligent in failing to keep a proper look out and in skiing at a high rate of speed when Fahlgren collided with D.V., causing D.V. to sustain permanent and debilitating injuries.  A true and correct copy of the Complaint in the *D.V.* Action is attached here to as Exhibit A.

11.    On October 4, 2017, Joel Vermillion filed an Amended Complaint in the *D.V.* Action (the "Amended Complaint") based on the same operative facts asserted in the Complaint but praying for additional damages, $6 Million in non-economic damages and $11 Million in economic damages, plus future medical bills, in addition to costs and disbursements.  A true and correct copy of the Amended Complaint is attached hereto as Exhibit B.

12.    The Amended Complaint likewise alleged that at all material times Fahlgren was working and volunteering within the scope and course of his employment with GBSD and OISRA and was acting as an actual and apparent agent of GBSD and OISRA.

13.    According to the Amended Complaint, Fahlgren's negligence in failing to keep a proper look out and in skiing at an excessive rate of speed caused D.V.'s bodily injuries, which included traumatic brain damage, multifocal intra-parenchymal hemorrhages, right subarachnoid hemorrhage, extensive diffuse axonal injury, left femur fracture, left clavicular fracture, left hemiparesis, displaced nasal bone fracture, tooth trauma, and impaired cognition/post concussive syndrome.  *See* Exhibit B.

COMPLAINT FOR DECLARATORY JUDGMENT,
EQUITABLE CONTRIBUTION, CONTRACTUAL
SUBROGATION AND EQUITABLE SUBROGATION -
Page 4

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

14.     On or about February 7, 2019, Joel Vermillion filed the *Joel Vermillion* Action based on the same operative facts alleged in the *D.V.* Action and sought damages for injuries in the form of horror, shock and mental anguish he incurred while witnessing the Accident and resulting injuries to his son, D.V. (the "Bystander Complaint").  The Bystander Complaint alleged that at the time of the Accident, Fahlgren was working and volunteering within the course and scope of his employment with GBSD and OISRA and was acting as an actual and apparent agent of GBSD and OISRA.  A true and correct copy of the Bystander Complaint is attached hereto as Exhibit C.

## THE CLAIMS

15.     The Accident was first reported to ASIC on February 17, 2017, pursuant to the ASIC Primary Policy under which OISRA was a named insured Certificate Holder, and Fahlgren was an additional insured.  A true and correct copy of the Broker's Acord General Liability Notice of Occurrence/Claim, redacted to protect private individuals' information, including information subject to FRCP 5.2, is attached hereto as Exhibit D.

16.     On or about April 11, 2017, D.V. and his parents sent a notice of their claims under the Oregon Tort Claims Act to OISRA.  A true and correct copy of the notice, redacted to protect information subject to FRCP 5.2, is attached hereto as Exhibit E.

17.     On or about June 15, 2017, Joel Vermillion, D.V.'s father, filed the Complaint in the *D.V.* Action.  ASIC promptly agreed to defend OISRA and Fahlgren against the claims in the *D.V.* Action.

18.     Based on information and belief, at all relevant times, GBSD and Fahlgren were members of OISRA.  On July 28, 2017, PACE tendered GBSD's defense to OISRA pursuant to a membership application stating "[T]he OISRA provides indemnification to member schools, OISRA coaches, volunteers and racers."  In turn, OISRA tendered PACE's demand for a defense

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

of GBSD to ASIC, on August 2, 2017.  A true and correct copy of the July 28, 2017 GBSD

Tender letter and the corresponding August 2, 2017 letter, redacted to protect private individuals'

information, including information subject to FRCP 5.2, is attached hereto as Exhibit D.

19.    Based on information and belief, PACE received notice of the *D.V.* Action on or

before July 28, 2017.  *See* Exhibit F.

20.    Based on information and belief, PACE either disclaimed having a duty to defend

Fahlgren or simply neglected to address its duty to defend Fahlgren against the allegations in the

*D.V.* Action.

21.    On or about August 14, 2017, ASIC accepted PACE's tender of GBSD's defense

and retained OISRA and Fahlgren's defense counsel to also defend GBSD.  A true and correct

copy of ASIC's acceptance letter, redacted to protect information subject to FRCP 5.2, is

attached hereto as Exhibit G.

22.    On or about October 27, 2017, State Farm also agreed to defend Fahlgren as a

named insured under Fahlgren's personal homeowners' policy, and on or about February 23,

2018, State Farm agreed to share with ASIC defense costs and expenses incurred by ASIC in the

*D.V.* Action on a "50/50 basis."

23.    On or about October 3, 2018, State Farm's counsel sent written correspondence to

PACE and ASIC demanding, in relevant part, that PACE pay its proportionate share of PACE's

indemnity obligation on Fahlgren's behalf in the *D.V.* Action.

24.    On or about October 12, 2018, ASIC sent a confidential settlement

communication to PACE's legal counsel and demanded that PACE participate at mediation in

the *D.V.* Action and contribute to settlement on GBSD and Fahlgren's behalf ("ASIC Demand

Letter).

COMPLAINT FOR DECLARATORY JUDGMENT,
EQUITABLE CONTRIBUTION, CONTRACTUAL
SUBROGATION AND EQUITABLE SUBROGATION -
Page 6

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

25.     On October 30, 2018, PACE responded to the ASIC Demand Letter by and through its counsel, and disclaimed having any obligation to indemnify GBSD and Fahlgren ("PACE Disclaimer") in the *D.V.* Action.  A true and correct copy of the unprivileged portion of the PACE Disclaimer is attached hereto as Exhibit H.

26.     Mediation of the *D.V.* Action took place on March 7, 2019 and terminated without resolution.

27.     On or about February 7, 2019, Joel Vermillion filed the *Joel Vermillion* Action. On March 8, 2019, PACE, by and through its counsel, tendered GBSD's defense against the claims at issue in the *Joel Vermillion* Action to ASIC.  A true and correct copy of the March 8, 2019 GBSD tender letter, redacted to protect information subject to FRCP 5.2, is attached hereto as Exhibit I.

28.     In May 2019, the parties to the Underlying Actions, along with ASIC and State Farm, participated in mediation of the Underlying Actions.  The parties reached a confidential settlement agreement.  ASIC and State Farm funded the settlement without contribution from PACE.

29.     On or about July 22, 2019, Fahlgren assigned his rights to coverage under the applicable PACE Policy to ASIC and State Farm (the "Assignment").

30.     In accordance with its rights under the Assignment, ASIC and State Farm commenced efforts to recover PACE's proportionate share of defense costs and proportionate share of the confidential settlement amount.  PACE, State Farm and ASIC attended mediation on August 10, 2020 regarding allocation of defense costs and the confidential settlement amount. Mediation terminated without resolution, culminating in ASIC filing the matter presently before the Court.

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 7

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

## V.    INSURANCE POLICIES

### A.    <u>The PACE Policy</u>

31.    PACE issued the PACE Policy, a Liability Coverage Document for the Oregon School Boards Association, with a policy period of July 1, 2016 through July 1, 2017.  The PACE Policy has a primary liability limit of $500,000 and an increased limit of liability of $9.5 million.  The PACE Policy provides coverage for "Named Participants" and "Participants."

32.    Based on information and belief, GBSD is a Named Participant on the PACE Policy, and Fahlgren is a Participant.

33.    Based on information and belief, a true and correct copy of the PACE Policy is attached as Exhibit J.

34.    The PACE Policy includes a Coverage Agreement that states in relevant part as follows:

*        *        *

### I.    COVERAGE AGREEMENTS

In consideration of the contribution made and subject to the terms, exclusions and definitions hereinafter mentioned, the **Trust** will pay on behalf of the **Participant** those sums which the **Participant** shall be legally obligated to pay as **Damages** because of **Bodily Injury**, **Personal Injury, Property Damage** and **Wrongful Acts** to which the following applies:

<u>Coverage A:</u>    Liability for **Damages** caused by a **Tort** arising under and governed by the Oregon Tort Actions Against Public Bodies Act, including the limits of liabilities set forth therein, Oregon Revised Statutes 30.260 to 30.300. This coverage applies to liability caused by an **Occurrence** or **Wrongful Act** as defined in this Coverage Document.

*        *        *

Coverages A, B, C and Additional Coverages apply to **Bodily Injury**, **Property Damage, Personal Injury** or **Wrongful Acts(s)** only if:

1. The **Bodily Injury**, **Property Damage, Personal Injury** or **Wrongful Act(s)** takes place in the **Coverage Territory**.

2. The **Bodily Injury**, **Property Damage, Personal Injury** or **Wrongful Act(s)** takes place during the **Coverage Period**, provided that prior to the **Coverage Period**, no **Participant** authorized by the **Named Participant** to give or receive notice of an **Occurrence** or **Claim**, knew that the **Bodily Injury**, **Property Damage, Personal Injury**, or **Wrongful Act(s)** had taken place, in whole or in part. If such a **Participant** knew, prior to the **Coverage Period**, that the **Bodily Injury**, **Property Damage, Personal Injury** or **Wrongful Act(s)** took place, then any continuation, change or resumption of such **Bodily Injury**, **Property Damage, Personal Injury** or **Wrongful Act(s)** during or after the **Coverage Period** will be deemed to have been known prior to the **Coverage Period** and will not be covered hereunder.

\*       \*       \*

35.    PACE has a duty to defend any suit against a Participant seeking Damages covered under Coverage A, as follows:

\*       \*       \*

<u>DEFENSE</u>

Solely with respect to any **Claim** which is covered under Coverages A, B and C above:

The **Trust** shall have the right and duty to defend any **Suit or Action** against a **Participant** seeking **Damages** on account of liability covered by Coverages A, B and C even if any of the allegations of the **Suit or Action** are groundless, false or fraudulent, and to make any such investigation and settlement of any **Suit or Action** it deems expedient. The duty to defend any **Suit or Action** shall terminate, except as provided hereafter, when such **Suit or Action** ceases to seek **Damages** against the **Participant**. The **Trust** shall not be obligated to pay any **Claim** or judgment or to defend any **Suit or Action** after the applicable **Limit of Liability** has been exhausted.

The **Trust** has no duty to defend until such time as the **Participant** has provided notice to the **Trust** as provided in Section VI. Conditions, Subsection M., and the **Trust** shall have no obligation to pay any sum for fees, expenses or costs incurred for the defense of a **Participant** prior to such notice.

\*       \*       \*

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile : (503) 616-3600

36.    The PACE Policy includes relevant definitions as follows:

\*    \*    \*

**VII.    DEFINITIONS**

\*    \*    \*

D.    **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*    \*    \*

G.    **Claim**, whenever used in this Coverage Document, shall mean any information that may give rise to **Damages** covered under this Coverage Document. **Claim** includes but is not limited to service of a notice of **Claim**, service of **Suit or Action** or institution of arbitration proceedings against a **Participant**.

\*    \*    \*

K.    **Damages** means a monetary amount for which a **Participant** is liable under this Coverage Document, but **Damages** do not include:

1.    Fines;

2.    Statutory penalties;

3.    Civil penalties under any statute;

4.    That portion of any monetary amount representing double, treble, or other form of multiplied damages;

5.    Civil penalties under Federal or State law;

6.    Punitive damages;

7.    Money or costs which are normal business expenses of the **Named Participant**, such as, but not limited to, repair or maintenance of the **Named Participant's** property; or

8.    Funds improperly collected or retained from any taxpayer or governmental agency by a **Participant** or by any other party that improperly receives funds from any taxpayer or governmental agency due to the negligence of a **Participant**.

\*    \*    \*

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile:  (503) 616-3600

AD. **Occurrence** means:

1. with respect to **Bodily Injury** and **Property Damage,** an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

\*        \*        \*

AF. **Participant** means:

1. The **Named Participant** and each of the following while acting within the course and scope of their duties as such:

    a. Members of the Board;

    b. Executive Officers;

    c. **Employees**;

    d. Volunteers and Agents;

    e. Registered Students whose course study includes on-the-job training, but only while acting under directions and within the scope of their activities performed while in training;

    f. Student Organizations, Parent Teacher Organizations, Booster Clubs and Foundations under the jurisdiction and supervision of the governing board; and

    g. Any person, entity or any organization the **Named Participant** is required by an **Insured Contract** to include as a **Participant**. This coverage will be limited to the extent of coverage and **Limits of Liability** required by the **Insured Contract** and will not increase the limits stated in SECTION V. – LIMITS OF LIABILITY or alter any of the terms of coverage stated in this Coverage Document. The **Insured Contract** must be effective and executed prior to a covered **Occurrence** or **Wrongful Act**. In no event shall coverage under this Coverage Document extend to any party for any **Claim** however or whenever asserted, arising out of such party's sole negligence.

    (1) The term "Additional Insured" if used in an **Insured Contract** shall be understood to mean the same as Additional **Participant**.

\*        \*        \*

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 11

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

AL. **Suit or Action** means a civil proceeding in which **Damages** to which this Coverage Document applies are alleged. **Suit or Action** also includes an arbitration proceeding in which such **Damages** are claimed and to which the **Participant** must submit or does submit with our consent, or any other alternative dispute resolution proceeding in which such **Damages** are claimed and to which the **Participant** submits with the **Trust's** consent.

AM. **Tort** is defined by ORS 30.260(8) and means the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for **Damages** or for a protective remedy.

AN. **Trust** means the OSBA Property and Casualty Coverage for Education Trust.

\*       \*       \*

37.    The PACE Policy addresses priority of coverage with PACE's co-insurers as follows:

\*       \*       \*

K.    OTHER COVERAGE OR INSURANCE

If the **Participant** has other applicable, collectible coverage of any kind, including insurance, that applies to the **Claim**, the coverage for **Damages** provided by this Coverage Document shall be excess, and in no event, contributing coverage, and then only for the amount for **Damages** which would be payable on behalf of the **Participant** under such forms of coverage. In no event, however, shall the liability hereunder exceed the **Limits of Liability** set forth herein.

Notwithstanding the above paragraph in the event that the **Named Participant** has entered into an **Insured Contract** effective and executed prior to the date of an **Occurrence** or **Wrongful Act**, if such contract requires the **Participant** to provide primary coverage in respects to the **Insured Contract** activities this coverage shall be considered primary. However, in no event shall the liability hereunder exceed the **Limit of Liability** set forth herein.

\*       \*       \*

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 12

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 382-3844
Facsimile : (503) 616-3600

B.    **The ASIC Policies**

38.    ASIC issued the ASIC Primary Policy to the Alpine Ski School Program, with liability limits of $1 million per occurrence for the policy period of July 1, 2016 to July 1, 2017. ASIC also issued the ASIC Excess Policy to the Alpine School Program with limits of liability of $4 million per occurrence for the policy period of July 1, 2016 to July 1, 2017.  OISRA is a named insured Certificate Holder on the ASIC Primary Policy and thus, a Named Insured under the ASIC Primary Policy as per ASIC Primary Policy endorsement IL 12 01 11 85.  As a volunteer coach, Fahlgren was an additional insured under the ASIC Primary Policy endorsement ECG 20 529 12 05 and likewise an additional insured under the ASIC Excess Policy.  True and correct copies of the ASIC Primary Policy and the ASIC Excess Policy are attached as Exhibit K.

39.    The ASIC Primary Policy afforded coverage to OISRA and Fahlgren pursuant to a commercial general liability insuring agreement that reads as follows:

\*        \*        \*

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 13

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

\*        \*        \*

40.     The ASIC Primary Policy incudes relevant definitions that state as follows:

\*        \*        \*

## SECTION V – DEFINITIONS

\*        \*        \*

**3.** "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*        \*        \*

**13.** "Occurrence" means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

\*        \*        \*

41.     Fahlgren was covered as an additional insured on the ASIC Primary Policy

pursuant to an Additional Insured – Sports Trainers endorsement that states as follows:

## ADDITIONAL INSURED - SPORTS TRAINERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Minimum Required Limits of Insurance**
$1,000,000

---

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile : (503) 616-3600

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

Section II - **Who Is An Insured** is amended to include as an Insured the Sports Trainer(s) working on your behalf as a "trainer" while acting within the scope of their duties for you as such and from whom you have obtained current certificates of insurance for in-force Professional Liability policies. The certificates must evidence:

1) Limits of at least the amounts shown in the Schedule above; and
2) Insurance with an insurance company that is A.M. Best rated A-VII or better as of the effective date of this insurance.

A "trainer" is defined as anyone who, under the direction, advice and consent of his/her team physician, carries out the practice of prevention and/or physical rehabilitation of injuries incurred by athletes.

As respects this endorsement, the '**Other Insurance**' condition in **Section IV – Commercial General Liability Conditions** is deleted and replaced with the following:

This insurance is excess over, and shall not contribute with, any other insurance, whether or not such other insurance is stated to be primary, excess, contingent, catastrophe, umbrella or on any other basis.

We will have no duty under Coverage **A Bodily Injury And Property Damage Liability** or coverage **B Personal And Advertising Injury Liability** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against those other insurers.

Under this excess insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
(2) The total of all deductible and self-insured amounts under all such other insurance.

42.   The ASIC Excess Policy's insuring agreement defines the parameters of coverage as follows:

\*   \*   \*

## I.  SECTION I. COVERAGE

## A.  EXCESS LIABILITY – INSURING AGREEMENT

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 15

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

1. This insurance applies only to injury or damage covered by "underlying insurance". The definitions, terms, conditions, limitations, exclusions and warranties of the "underlying insurance" in effect at the inception of this policy apply to this coverage unless they:

    a. Conflict with the provisions of this insurance; or

    b. Relate to any of the following: premium; our right to recover payment; "other insurance"; any duty to investigate or defend; the amount or limits of insurance; the payment of expenses; cancellation; or any renewal agreement.

2. We will pay on behalf of any insured those sums in excess of "underlying insurance" or "other insurance" that any insured becomes legally obligated to pay as damages to which this insurance applies. If "underlying for any reason other than exhaustion of their limits of insurance, we will not pay such claim or "suit".

3. This insurance applies only to:

    a. "Occurrences" which take place during this policy period.

*        *        *

43.    The Schedule of Underlying Insurance in the ASIC Excess Policy states as follows:

<strong>SCHEDULE OF UNDERLYING INSURANCE</strong>

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA AND EXCESS LIABILITY COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART

<strong>Schedule of Underlying Insurance</strong>

| Name of Underlying Insurer Underlying Policy Number Underlying Policy Period | Coverage | Limit of Insurance (Underlying Limit) |
|---|---|---|
| Company: Atlantic Specialty Insurance Company Policy Number: GL01390-07 Policy Term: 07-01-16 to 07-01-17 | Commercial General Liability X Occurrence Form   Claims Made Form   Retroactive Date: | General Aggregate $2,000,000 Products Complete Operations Agg. $1,000,000 Personal and Advertising Limit $1,000,000 Each Occurrence Limit $1,000,000 |

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 16

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

44.     Fahlgren was afforded coverage as an additional insured under the ASIC Excess

Policy as follows:

\*       \*       \*

**5.  Additional Insureds**

At your option, any person or organization who is added as an additional insured in "underlying insurance" after the inception of this policy is an insured, but only:

**a.**  When you agree prior to the time of an "occurrence" to provide such insurance as is afforded by this insurance; and

**b.**  With respect to liability arising out of:

**(1)**  "your work" or "your products"; or

**(2)**  Property owned or used by you.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured, subject to this policy limit, is the amount of insurance required by the contract or agreement, less any amounts payable by any "underlying insurance" or "other insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

\*       \*       \*

45.     The ASIC Excess Policies include applicable definitions as follows:

\*       \*       \*

**SECTION V. DEFINITIONS**

\*       \*       \*

**3.**  "Occurrence"

The definition of the term "occurrence" contained in "underlying insurance" applies to this insurance, whether described as an "occurrence", injury, offense or wrongful act.

**4.**  "Other insurance" means insurance which is available to any insured and covers injury or damage to which this insurance applies, other than:

**a.**  "Underlying insurance"; or

---

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

**b.** Insurance which is specifically purchased by you to be excess of the insurance afforded by this insurance.

\*       \*       \*

**8.** "Underlying insurance" means any policies of insurance listed in the declarations under the schedule of "underlying insurance" policies.

**9.** "Underlying insurer" means the insurer of the "underlying insurance" or "other insurance" policies.

\*       \*       \*

## VI.    CLAIMS FOR RELIEF

## <u>FIRST CLAIM FOR RELIEF</u>

### (Declaratory Judgment – Duty to Defend)

46.    ASIC incorporates by reference the allegations of paragraphs 1through 45 above.

47.    The pleadings in the Underlying Actions alleged that Fahlgren was working and volunteering for GBSD in the course and scope of his employment for GBSD and likewise alleged that Fahlgren was an actual and apparent agent of GBSD at the time of the Accident.

48.    PACE had a duty to defend a Participant in any Suit seeking covered Damages, as those terms are defined in the PACE Policy.

49.    Based on information and belief, GBSD is a Named Participant on the PACE Policy.

50.    The PACE Policy defines "Participant" to include "Volunteers and Agents" and "Employees" of the Named Participant, GBSD.  Fahlgren was alleged to be a GBSD volunteer, employee and agent acting in the course and scope of his employment for GBSD at the time of the Accident, and thus, was an alleged "Participant," pursuant to the allegations in the Underlying Actions and in accordance with the PACE Policy's "Participant" definition.

51.    In the Underlying Actions, the Vermillions sought monetary damages included in the PACE Policy's definition of "Damages" and for which Fahlgren was allegedly legally

---

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 18

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

obligated because of D.V.'s "Bodily Injury," which took place during the Coverage Period and was caused by the Accident or "Occurrence," as defined by the PACE Policy.

52.     Based on information and belief, Fahlgren's alleged liability was for damages caused by a "Tort" arising under and governed by the Oregon Tort Actions Against Public Bodies Act. Thus, the "Damages" sought in the Underlying Actions were on account of liability covered by Coverage A.

53.     PACE had a duty to defend Fahlgren in the Underlying Actions, because the Underlying Actions were Suits filed against a Participant, Fahlgren, on account of liability covered by Coverage A.

54.     Based on information and belief, PACE was put on notice of the claims at issue in the *D.V.* Action by Named Participant, GBSD, or Participant, Fahlgren, on or before July 28, 2017,  at which time PACE's duty to defend Fahlgren was triggered.

55.     Based on information and belief, PACE either denied having a duty to defend Fahlgren against the claims in the *D.V.* Action or wholly neglected to address its defense obligation to Fahlgren.

56.     Based on information and belief, PACE was put on notice of the claims at issue in the *Joel Vermillion* Action by GBSD or Fahlgren, on or before March 8, 2019 at which time PACE's duty to defend Fahlgren was triggered.

57.     Based on information and belief, PACE either denied having a duty to defend Fahlgren against the claims in the *Joel Vermillion* Action or wholly neglected to address its defense obligation to Fahlgren.

58.     ASIC and State Farm defended Fahlgren in the Underlying Actions without contribution from PACE.  Thus, a dispute exists between ASIC, as assignee of Fahlgren's claims

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 19

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

against PACE, and PACE, with respect to insurance coverage for Fahlgren under the PACE Policy for the claims that were at issue in the Underlying Actions.

59.     ASIC, as assignee of the rights of Fahlgren and as a co-insurer of Fahlgren, is entitled to a declaratory judgment that PACE was obligated under the PACE Policy to defend Fahlgren against the claims in the Underlying Actions.

60.     ASIC is entitled to its attorney's fees and costs incurred in prosecuting this action.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment – Duty to Indemnify)

61.     ASIC incorporates by reference the allegations of paragraphs 1 through 60 above.

62.     Based on information and belief, Fahlgren was working and volunteering for GBSD as a ski instructor in the course and scope of volunteering for GBSD and was likewise an actual and apparent agent of GBSD, at the time of the Accident.

63.     PACE had a duty to indemnify a Participant for covered Damages, as those terms are defined in the PACE Policy.

64.     Based on information and belief, GBSD is a Named Participant on the PACE Policy.

65.     The PACE Policy defines "Participant" to include "Volunteers and Agents" of a Named Participant, such as GBSD.  Based on information and belief, Fahlgren was working and volunteering for GBSD as a ski instructor in the course and scope of volunteering for GBSD and was likewise an actual and apparent agent of GBSD, at the time of the Accident.

66.     At issue in the Underlying Actions were monetary damages included in the PACE Policy's definition of "Damages" and for which Fahlgren was allegedly legally obligated because of D.V.'s "Bodily Injury," that took place during the Coverage Period and which was caused by the Accident or "Occurrence."  Based on information and belief, Fahlgren's liability

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 20

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

was for Damages caused by a "Tort" arising under and governed by the Oregon Tort Actions Against Public Bodies Act. Thus, the "Damages" sought in the Underlying Actions were on account of liability covered by Coverage A.

67.    Pursuant to the PACE Policy, PACE had a duty to indemnify Fahlgren in the Underlying Actions, because the injuries at issued in the Underlying Actions were caused by Participant Fahlgren, and covered by Coverage A of the PACE Policy.

68.    Based on information and belief, PACE was put on notice of the claims at issue in the *D.V.* Action by GBSD or Fahlgren, on or before July 28, 2017.

69.    Based on information and belief, PACE was put on notice of the claims at issue in the Joel Vermillion Action by GBSD or Fahlgren, on or before March 8, 2019.

70.    PACE denied having a duty to indemnify Fahlgren in the Underlying Actions. ASIC and State Farm contributed to settlement of the Underlying Actions without contribution from PACE.

71.    Thus, a dispute exists between ASIC, as assignee of Fahlgren's claims against PACE, and PACE, with respect to insurance coverage for Fahlgren under the PACE Policy for the claims that were at issue in the Underlying Actions.

72.    ASIC, as assignee of the rights of Fahlgren against PACE and co-insurer of Fahlgren, is entitled to a declaratory judgment that PACE was obligated under the PACE Policy to indemnify Fahlgren for the claims against Fahlgren in the Underlying Lawsuits.

73.    ASIC is entitled to its attorney's fees and costs incurred in prosecuting this action.

## <u>THIRD CLAIM FOR RELIEF</u>

### (Declaratory Judgment—Priority of Coverage ASIC Excess Policy and PACE Policy)

74.    ASIC incorporates by reference the allegations in paragraphs 1 through 73 above.

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 21

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 382-3844
Facsimile : (503) 616-3600

75.     PACE and ASIC had a concurrent defense and indemnify obligation to Fahlgren pursuant to the respective PACE Policy and the ASIC Primary Policy.

76.     The PACE Policy addresses priority of coverage with PACE's co-insurers in an "OTHER COVERAGE OR INSURANCE PROVISION," which provides that if there is other applicable and collectible coverage, the coverage for "Damages" provided by the PACE Policy is excess to and shall not contribute with the other applicable and collectible insurance coverage.

77.     Priority of coverage for Fahlgren under the ASIC Primary Policy is addressed in the "ADDITIONAL INSURED-SPORTS TRAINERS" endorsement, which provides that additional insured coverage is "[e]xcess over, and shall not contribute with, any other insurance, whether or not such other insurance is stated to be primary, excess, contingent, catastrophe, umbrella or on any other basis."

78.     Because the PACE Policy and the ASIC Primary Policy include excess other insurance clauses, which if enforced would absolve PACE and ASIC from covering Fahlgren's negligence, neither the PACE Policy excess clause nor the ASIC Primary Policy excess clause applied with regard to PACE and ASIC's duties to defend and indemnify Fahlgren in the Underlying Actions.

79.     The PACE Policy and the ASIC Primary Policy afforded concurrent defense and indemnity coverage to Fahlgren in the Underlying Actions.  Thus, PACE should have contributed to Fahlgren's defense and settlement of the Underlying Actions along with ASIC's contribution under the ASIC Primary Policy on the basis of pro rata by liability limits.

80.     Thus, a dispute exists between ASIC, as assignee of Fahlgren's claims against PACE, and PACE with respect to priority of coverage for Fahlgren under the PACE Policy and the ASIC Primary Policy for the claims that were at issue in the Underlying Actions.

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 22

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

81.     ASIC, as assignee of the rights of Fahlgren against PACE and as Fahlgren's co-insurer, is entitled to a declaratory judgment that PACE was obligated to contribute to Fahlgren's defense and the settlement of the claims against Fahlgren in the Underlying Actions on a pro rata by liability limits basis.

82.     ASIC is entitled to its attorney's fees and costs incurred in prosecuting this action.

### FOURTH CLAIM FOR RELIEF

**(Declaratory Judgment—Priority of Coverage
ASIC Primary Policy and PACE Primary Policy)**

83.     ASIC incorporates by reference the allegations in paragraphs 1 through 82 above.

84.     The PACE Policy affords primary liability coverage subject to certain terms and conditions, including an "OTHER COVERAGE OR INSURANCE PROVISION," which provides that if there is other applicable and collectible coverage, the coverage for "Damages" afforded by the PACE Policy is excess to and shall not contribute with any other applicable and collectible insurance coverage.

85.     The ASIC Excess Policy is a true excess policy that never pays "first-dollar" coverage as per its Insuring Agreement stating that the ASIC Excess Policy only "[p]ays on behalf of any other insured those sums in excess of 'Underlying insurance' or 'Other insurance' that any insured becomes legally obligated to pay as damages to which this insurance applies."

86.     The ASIC Excess Policy defines "Underlying insurance" to mean any policies of insurance listed on the declarations under the schedule of "Underlying insurance" policies.  The ASIC Excess Policy's schedule of underlying insurance lists the ASIC Primary Policy as the Underlying Insurance.

87.     The ASIC Excess Policy defines "Other Insurance" to include "[i]nsurance which is available to any insured and covers injury or damage to which this insurance applies, other

COMPLAINT FOR DECLARATORY JUDGMENT,
EQUITABLE CONTRIBUTION, CONTRACTUAL
SUBROGATION AND EQUITABLE SUBROGATION -
Page 23

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

than 'underlying insurance' or "insurance which is specifically purchased by you to be excess of the insurance afforded by this insurance."

88.     The PACE Policy was not specifically purchased to be excess of the insurance afforded by the ASIC Excess Policy, and the PACE Policy is not Underlying Insurance.  Thus, the PACE Policy is "Other Insurance," and ASIC's indemnity obligation to Fahlgren under the ASIC Excess Policy was for sums in excess of the PACE Policy.

89.     Although the PACE Policy includes an excess "other insurance" provision and an "increased limit of liability" of $9.5M, the PACE Policy is not an excess policy but rather, a primary policy with an excess "other insurance" clause.

90.     The ASIC Excess Policy affords true excess coverage over and above all "Other Insurance," including the PACE Policy.  Thus, coverage afforded to Fahlgren under the ASIC Excess Policy, and the coverage afforded to Fahlgren under the PACE Policy was not co-insurance, and ASIC and PACE's coverage obligations are not concurrent with respect to the ASIC Excess Policy.

91.     Because the ASIC Excess Policy afforded coverage in excess of any "Other Insurance," the "increased limit of liability" of $9.5M on the PACE Policy should have been fully exhausted by PACE's settlement of the Underlying Actions on Fahlgren's behalf, before any defense of indemnity obligation under the ASIC Excess Policy was triggered.

92.     Thus, a dispute exists between ASIC, as assignee of Fahlgren's claims against PACE, and PACE, with respect to priority of coverage for Fahlgren under the PACE Policy and under the ASIC Excess Policy for the claims that were at issue in the Underlying Actions.

93.     ASIC, as assignee of the rights of Fahlgren against PACE, ASIC is entitled to a declaratory judgment that the ASIC Excess Policy was excess to all "Other Insurance," including the PACE Policy's "increased limit of liability," and ASIC's indemnity obligation to Fahlgren in

COMPLAINT FOR DECLARATORY JUDGMENT,
EQUITABLE CONTRIBUTION, CONTRACTUAL
SUBROGATION AND EQUITABLE SUBROGATION -
Page 24

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

the Underlying Actions was not triggered until the PACE Policy's "increased limit of liability" was fully exhausted by PACE's indemnity obligation to Fahlgren in the Underlying Actions.

94.     ASIC is entitled to its attorney's fees and costs incurred in prosecuting this action

## FIFTH CLAIM FOR RELIEF

### (Contractual Subrogation)

95.     ASIC incorporates by reference the allegations in paragraphs 1 through 94 above.

96.     Under the terms of the PACE Policy, PACE had an obligation to defend and indemnify Fahlgren in the Underlying Lawsuits because Fahlgren qualifies as a Participant under the PACE Policy and the Claims at issue in the Underlying Actions were for liability within the coverage of the PACE Policy.

97.     As a result of PACE's wrongful denial of its obligations to defend and indemnify Fahlgren for the Underlying Actions, ASIC and State Farm provided a defense to Fahlgren and together settled the Underlying Actions, including the settlement of claims covered by the PACE Policy.

98.     Fahlgren assigned his rights against PACE to ASIC and State Farm.  ASIC asserts this claim for contractual subrogation on its own behalf and as assignee of the rights of Fahlgren against PACE.

99.     As a result of PACE's wrongful breach of the PACE Policy, ASIC was harmed and is entitled to damages for ASIC's equitable share of PACE's allocated share of the settlement, plus defense costs incurred in the defense of the Underlying Actions.

100.    ASIC is entitled to its attorney's fees and costs incurred in prosecuting this action.

COMPLAINT FOR DECLARATORY JUDGMENT,
EQUITABLE CONTRIBUTION, CONTRACTUAL
SUBROGATION AND EQUITABLE SUBROGATION -
Page 25

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile :  (503) 616-3600

## FOURTH CLAIM FOR RELIEF

### (Equitable Subrogation)

101.    ASIC incorporates by reference the allegations in paragraphs 1 through 100 above.

102.    Under the terms of the PACE Policy, PACE had an obligation to defend and indemnify Fahlgren for the Underlying Actions because Fahlgren qualifies as a Participant under the PACE Policy, and the Claims in the Underlying Actions were for liability within the coverage of the PACE Policy.

103.    As a result of PACE's wrongful denial of its obligations to defend and indemnify Fahlgren for the Underlying Actions, ASIC and State Farm provided a defense to Fahlgren and together settled the Underlying Actions, including settlement of claims covered by the PACE Policy.

104.    As a result of PACE's wrongful breach of the PACE Policy, ASIC was harmed and is entitled to damages for ASIC's equitable share of PACE's allocated share of the settlement, plus defense costs incurred in the defense of the action.

105.    ASIC is entitled to its attorney's fees and costs incurred in prosecuting this action.

## FIFTH CLAIM FOR RELIEF

### (Contribution)

106.    ASIC incorporates by reference the allegations in paragraphs 1 through 105 above.

107.    ASIC paid more than its equitable share of the settlement and defense of Fahlgren in connection with the Underlying Actions, under the terms of the ASIC Primary Policy and the ASIC Excess Policy.

108.    As a result of PACE's wrongful breach of the PACE Policy, ASIC was harmed and is entitled to damages for ASIC's equitable share of PACE's allocated share of the settlement, plus defense costs incurred in the defense of the Underlying Actions.

109.    ASIC is entitled to its attorneys' fees and costs incurred in prosecuting this action.

## VII.    REQUEST FOR RELIEF

Plaintiff, Atlantic Specialty Insurance Company, respectfully requests the following relief:

1.    A declaratory judgment that PACE was obligated to defend and indemnify Fahlgren for the Underlying Actions;

2.    A declaratory judgment that PACE had an obligation to contribute, with ASIC's defense and indemnity obligation to Fahlgren in the Underlying Actions, under the ASIC Primary Policy on a pro rata by liability limit basis;

3.    A declaratory judgment that the ASIC Excess Policy was excess to all "Other Insurance," including the PACE Policy's "increased liability limit of liability," and ASIC's indemnity obligation to Fahlgren in the Underlying Actions was not triggered until the PACE Policy's "increased limit of liability" was fully exhausted by PACE's indemnity obligation to Fahlgren in the Underlying Actions;

4.    A monetary award in favor of ASIC and against PACE, based on contractual and/or equitable subrogation, for ASIC's equitable share of PACE's allocated share of the amounts paid by ASIC for the defense and settlement of the Underlying Actions;

5.    A monetary award in favor of ASIC and against PACE, based on contribution, for ASIC's equitable share of PACE's allocated share of the amounts paid by ASIC for the defense and settlement of the Underlying Actions;

COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE CONTRIBUTION, CONTRACTUAL SUBROGATION AND EQUITABLE SUBROGATION - Page 27

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Telephone: (503) 382-3844
Facsimile : (503) 616-3600

6.      Interest and attorneys' fees as the law may allow; and

7.      Such other and further relief as the Court finds just and appropriate.


Dated:  January 8, 2021                    GORDON REES SCULLY MANSUKHANI, LLP


                                           By: *s/ Kelly F. Huedepohl*
                                               Kelly F. Huedepohl, OSB No. 133896
                                               khuedepohl@grsm.com
                                               *Attorneys For Plaintiff*

COMPLAINT FOR DECLARATORY JUDGMENT,       **GORDON REES SCULLY MANSUKHANI, LLP**
EQUITABLE CONTRIBUTION, CONTRACTUAL       1300 SW Fifth Avenue, Suite 2000
SUBROGATION AND EQUITABLE SUBROGATION -   Portland, OR  97201
Page 28                                   Telephone: (503) 382-3844
                                          Facsimile :  (503) 616-3600